## NAGLE, WITT, ROLLINS ENGINEERING CO. v. LA SALLE COUNTY WATER IMPROVEMENT DIST. NO. I.

### No. 8685.

Court of Civil Appeals of Texas. San Antonio.

Dec. 2, 1931.

Rehearing Denied Jan. 6, 1932.

Worsham, Rollins, Burford, Ryburn & Hincks, of Dallas, for appellants.

Gaines, Gaines & Roberts, Templeton, Brooks, Napier & Brown, and Bruce Teagarden, all of San Antonio, for appellee.

SMITH, J.

On January 7, 1925, the Nagle, Witt, Rollins Engineering Company, a partnership, appellants herein, entered into a written contract with the La Salle county water improvement district No. 1, appellee herein, by the terms of which the former, as civil engineers, agreed to furnish the latter the plans and specifications, and supervise the construction, of an irrigation system in said district. Upon the alleged breach of the contract by appellee, appellants brought this action against it to recover amounts alleged to be due them under the terms of the written contract, or, in the alternative, upon an implied contract identical in its terms with the written agreement. The trial court sustained the general demurrer to appellants' petition, and upon their refusal to amend dismissed the action. The engineering partners have appealed.

The contract sued on was made between the parties prior to the organization of appellee district, which was organized under the provisions of chapter 2, title 128, R. S. 1925, as authorized in subdivision (b), § 59a, art. 16, of the state Constitution. The contract was subdivided into three parts or sections. The obligations imposed upon the parties in the first section were to be performed by the parties prior to the organization of the district, and those under the second section after the organization of the district and before the construction of the proposed irrigation system and the voting of bonds therefor. It is sufficient to say here that appellants alleged in their petition that the obligations of the parties under these first two sections of the contract had been fully performed by the respective parties, and under those allegations appellants cut themselves off from any recovery under those two sections, which require no further notice in this opinion.

Under the third section of the contract, appellants were obligated to perform certain specified engineering services "after the sale of the bonds and during the construction of the dam and canals of the District," which services were to include the platting and field note description of each separately owned tract of land within the district; the location, design, and the preparation of plans and specifications of all the district's facilities within in the district; the planning of subdivisions of all irrigable lands within the district; the location, design, and preparation of all canals within the district; the supervision of all construction of all facilities and improvements within and for the district; to furnish a resident engineer and all engineering help, supplies, instruments, transportation, maps, profiles, plans, and specifications necessary to the project, and to supervise and direct all construction work therein; in short, to perform all the duties required of them as supervising and consulting engineers of such project.

On the other hand, the district was obligated in said contract, generally, to pay appellants for their services the sum of 5 per cent. commission of all construction and reservoir costs, including costs of materials, to be expended in connection with the professional services to be rendered by appellants in the project.

It was provided that the payment of this compensation should be made as follows: (1) During the time the required surveys were being made and plans and specifications prepared, appellee would pay the salaries of appellants' resident engineer and his assistants, and their field and office expenses, and a further sum of $300 per month to apply on appellants' overhead expenses. (2) Upon the completion of the survey of the lands within the reservoir, and the filing of transfers to the district, appellee would pay appellants 5 per cent. of the cost of such reservoir lands, less advances under paragraph (1). (3) Upon completion of the surveys, plans, and specifica-

tions for each section of work ready for advertisement of construction bids, appellee would pay appellants 2½ per cent. of the estimated cost of construction of that section of the work, less advances under paragraph (1). (4) During the progress of the construction work, appellee would pay appellants, in monthly installments, 2½ per cent. of the construction estimates allowed and paid for work done in the preceding month. (5) Upon the completion of the project, appellee would pay appellants the difference between 5 per cent. of the total cost of the completed work and prior advances. It was further provided that in no case should the sum of all payments exceed or fall short of 5 per cent. commission provided for, except that "any part of the work for which plans and specifications have been prepared by direction of the District be not constructed under the program, then the commission for engineering services in the preparation of designs, plans and specifications for omitted portions shall be limited to Two and One-half (2½) per cent."

It was alleged in their petition that appellants "performed all the services required of them in the third section of said contract, and did prepare the plans and specifications and estimates called for by Subdivision Three of said contract, and that the Defendant District did advertise for bids for the construction of such project, and that on or about the 5th day of December, 1926, bids were received and opened by the Board of Directors of the Defendant District, but that no contract was let." It further appears from said petition that no construction work was done upon appellee's proposed irrigation system, and that therefore appellants did not earn the pay provided in the contract for supervising said work; that, although construction bonds were issued by appellee, only $28,000 of said bonds were sold, and they were sold at 90 cents on the dollar, and practically all the proceeds thereof were paid over to appellants for services performed under the first and second sections of said contract. It appears that appellee issued and sold at par its "preliminary notes" in the sum of $75,000, as authorized in article 7634a, R. S. 1925 as added by Acts 39th Leg. (1925), c. 205 (Vernon's Ann. Civ. St. art. 7634a), and that the proceeds thereof were expended by appellee in the manner provided by law.

We have reached the conclusion from the allegations in the petition of appellants in the court below that, even if the contract was one prohibited by the Constitution or laws of the state, yet it was deliberately entered into by the proper district officials, thereunto lawfully authorized, prior to the organization of the district, and by them reaffirmed and ratified after the organization of the district, and at a time when they were certainly authorized to make such contract; that they induced appellants to perform the services exacted of them in the contract, and accepted and used such services and the benefits derivable therefrom up to the point of securing bids for the construction of the district irrigation system; and that the district was therefore liable to appellants upon said contract, in accordance with the terms thereof. City of Tyler v. Jester, 97 Tex. 344, 78 S. W. 1058; Sluder v. City of San Antonio (Tex. Com. App.) 2 S.W.(2d) 841.

But we are nevertheless of the further opinion that appellants alleged no cause of action against the district, because it appears from the pleading here tested that the bonds out of the proceeds of which appellants were to be paid have never been sold. It is expressly provided in the third subdivision of the contract, under which subdivision alone appellants seek recovery, that the duties exacted therein of appellants were "for the performance of engineering services after the sale of bonds and during the construction of the dams and canals for the District." It is obvious from the language of the contract that it was the intention of the parties that appellants were to be compensated for their services out of the proceeds of the sale of the construction bonds of the district, and that the payments therein provided for were not to become due and payable until said bonds were sold and the proceeds thereof deposited in the treasury of the district subject to disbursement by the district officials for this and other lawful purposes. In short, that the liability of the district to appellants was made contingent upon the sale of its said bonds, and until such sale the district shall not be required to complete its obligation to appellants. This construction is induced by the plain language of the contract by which the duties and liabilities of the parties must be fixed. Moreover, any other construction which would render the district liable prior to the sale of the bonds would be inconsistent with the law, which provides and authorizes no source for the payment of such obligations other than the proceeds from its legal bonds, issued and sold for that purpose. It is expressly alleged in appellants' pleadings that the district's construction bonds, although long since duly issued, have never been sold, and that, although the district long since advertised for bids for the construction of its irrigation system, no such contract has been let, and from these allegations it may be easily inferred that the whole project has failed, and that the bonds can or may never be sold. In such case the law provides no other means for the payment of appellants' demands. Appellants were and are charged with notice of the provisions of the law and of the constitutional and statutory limitations upon the powers and authority of such districts, and it will be presumed that they entered into and performed said contract with full knowledge that the only contingency by which the district's liability to them would

mature might never occur. Certainly it has not yet occurred, and until it does so appellants have no remedy.

 In their pleadings appellants offer to accept "short term" bonds from appellee in settlement of their demand, but, while the statute (article 7710, R. S. 1925) provides that such district "may exchange bonds * * * in the payment of contract price for work to be done for the use and benefit of said district," it is plain that the authority there granted to the district is one to be exercised within the discretion of the district officials, and by agreement with creditors.

We conclude that the trial court did not err in sustaining the general demurrer to appellants' petition and dismissing the cause, and the judgment will be affirmed.